UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GMS PILING PRODUCTS,** | : | |
| Plaintiff/ Counterclaim Defendant | : : | CIVIL ACTION NO. 3:20-63 (JUDGE MANNION) |
| v. | : | |
| **PRESSCRETE CO., INC.,** | : | |
| Defendant/ Counterclaim Plaintiff | : : | |

## MEMORANDUM

Pending before the court is the plaintiff's motion to dismiss the defendant's counterclaims. (Doc. 7). Based upon the court's review of the motion and related materials, the motion will be **GRANTED IN PART AND DENIED IN PART**.

By way of relevant background, plaintiff, GMS Piling Products ("GMS"), filed a two-count complaint against defendant, Presscrete Co., Inc., ("Presscrete"), in the Luzerne County Court of Common Pleas. In its complaint, plaintiff alleged claims for breach of contract and, in the alternative, for unjust enrichment. Defendant removed the matter to this court and, on January 21, 2020, filed an answer with affirmative defenses and counterclaims. The counterclaims consist of breach of contract, breach of

the covenant of good faith and fair dealing, unjust enrichment, and negligence and loss of business opportunity. Plaintiff then filed the instant motion to dismiss defendant's counterclaims.

The instant motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the complaint must provide the grounds for entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*,

515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544 at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250,1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is

justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

In support of its counterclaims, Presscrete alleges that GMS is engaged in the business of manufacturing and supplying steel products including, but not limited to, piping, drill rods and tooling to contractors.[1] Presscrete is, essentially, a pile driller centered-contractor which specializes in the design and installation of foundation piles, soldier piles, secant and tangent wall construction, tie-back and tie-downs, anchors and soil improvement.

Beginning in or around 2018, GMS supplied Presscrete with products including, but not limited to, piping, drill rods and tooling. GMS provided these products in connection with a secant wall project being undertaken, and eventually completed, by Presscrete at Empire Boulevard, Brooklyn, New York. GMS invoiced Presscrete for these products and was paid by Presscrete. No written contract or agreement was entered into between the parties with respect to this project or at any other point in time.

On or about October 29, 2018, Presscrete entered into a contract with Riverside Developers, Brooklyn, New York, to undertake a secant wall

---

[1] The facts set forth herein are taken directly from Presscrete's counterclaims (Doc. 4) and are accepted as true for purposes of the instant motion to dismiss.

project at 376 Flushing Avenue, Brooklyn, New York, which included, but was not limited to, furnishing and installing a secant wall at two locations, installing primary and secondary piles, furnishing and installing soldier piles, and furnishing and installing tie-backs. The net contract value for the work was $2,800,000.

In connection with the Flushing Avenue project, GMS provided Presscrete with certain products, namely GeoRocFor, Inc., products which ultimately proved to be vastly inferior to products supplied by GMS to Presscrete in connection with the project at Empire Boulevard. As a result, the work and timeline for the subsequent project was substantially delayed and ran forty-three days over schedule. This resulted in a substantial loss to Presscrete. Moreover, in order to meet drilling needs for the project, Presscrete was forced to purchase new drill heads and clamps and was forced to produce special casings at a cost of $237,000 to Presscrete.

Presscrete placed GMS on notice of the inferior GeoRocFor, Inc., products and the substantial delays in the work. GMS subsequently sent its own expert to the property to complete an inspection. GMS's expert acknowledged that the pins, which were supposed to be pressed into the ring bits, were too short and did not hold. GMS eventually provided new ring assemblies with longer pins in an attempt to alleviate the issue.

On or about March 15, 2019, as a direct and proximate result of the inferior products supplied by GMS to Presscrete and the subsequent delays of the work, River Developers amended the work and the October 29, 2018 contract for same to remove tie-back work, reduce the quantity of soldier piles installed and delete the secant pile work on one side of the project for a revised net contract value of $1,491,816. Moreover, as a result of the inferior products supplied by GMS, portions of the work had to be redone and/or reworked resulting in substantial losses to Presscrete.

Presscrete alleges that GMS misrepresented that it could provide supplies and/or products to Presscrete in a professional manner and which were in-line with industry standards. As a result of GMS's misrepresentation, Presscrete alleges that it suffered direct, proximate and consequential damages and has brought claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and negligence and loss of business opportunity.

In the pending motion, GMS moves to dismiss Presscrete's breach of contract claim arguing that it is legally insufficient. The parties agree that, under Pennsylvania law, a breach of contract claim requires (i) the existence of a contract, including its essential terms, (ii) a breach of a duty imposed by the contract, and (iii) resultant damages. *McShea v. City of Philadelphia*, 995

A.2d 334, 340 (Pa. 2010). Here, Presscrete alleges that the parties entered into an implied contract whereby GMS was to provide Presscrete with professional and industry-standard products and equipment to be used in line with the specification for the work on the Flushing Avenue property and, in consideration of that contract, Presscrete agreed to pay GMS. Presscrete alleges that GMS breached the contract by failing to provide professional products and/or equipment. As a result of GMS's breach, Presscrete alleges that it suffered damages. The court finds, at this stage of the proceedings, Presscrete's allegations are sufficient to state a claim for breach of contract under Pennsylvania law. Therefore, GMS's motion to dismiss will be denied on this basis.

GMS next argues that Presscrete fails to set forth a valid claim for breach of the covenant of good faith and fair dealing. To this extent, Presscrete alleges that the parties entered into an agreement, supported by consideration, whereby GMS agreed to provide professional and up-to-or-above industry standard products and equipment. Presscrete alleges that the parties were obligated to exercise good faith and fair dealing in relation to their agreement. Citing to *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F.Supp.2d 623, 630-31 (M.D.Pa. 2009), GMS argues that "there is 'no independent cause of action for a breach of the covenant of good faith and

fair dealing - arising in contract - in Pennsylvania because such a breach is merely a breach of contract.'" Read in context, *Zaloga* does not bar all actions for breach of the covenant of good faith and fair dealing. It does, however, provide that a breach of contract claim and a bad faith claim cannot be based on the same underlying conduct. Here, Presscrete's breach of the covenant of good faith and fair dealing is based upon the same underlying conduct as its breach of contract claim, that is GMS's failure to provide professional and up-to-or-above industry standard products and equipment. As such, the court will grant GMS's motion to dismiss on this basis.

GMS also argues that Presscrete's counterclaim for unjust enrichment must be stricken because a claim for unjust enrichment is not available when the parties have a contract between them and Presscrete has alleged a breach of contract claim. Regardless of whether the claims may be inconsistent, and while recovery may not be had for both unjust enrichment and breach of contract, Presscrete must allege both in order to allow recovery for unjust enrichment where its breach of contract claim cannot be established. *See Killinger v. Hosler Corp.*, 2015 WL 13779688 (CCP Pa. July 1, 2015) (string citation omitted). *See also Shafer Elec. & Constr. v. Mantia*, 67 A.3d 8 (Pa.Super.Ct. 2013) (litigant may advance either alternative or conflicting theories of recovery, including causes of action for breach of

contract and unjust enrichment). Given this, GMS's motion to dismiss will be denied on this basis.

Finally, GMS argues that Presscrete's negligence and loss of business opportunity tort claims should be dismissed pursuant to Pennsylvania's gist of the action doctrine and/or economic loss doctrine because the gravamen of the counterclaim sounds in contract and because all of the alleged harm in the counterclaim is a result of plaintiff GMS allegedly breaching a contract.

The "gist of the action" doctrine is "designed to maintain the conceptual distinction between breach of contract claims and tort claims." *eToll, Inc., v. Elias/Savion Adv., Inc.,* 811 A.2d 10, 14 (Pa.Super.Ct. 2002) ("Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements."). The doctrine bars tort claims "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Reed v. Dupuis,* 920 A.2d 861, 864 (Pa.Super.Ct. 2007).

Here, the basis of Presscrete's negligence/loss of business opportunity claim is duplicative of the basis of Presscrete's breach of contract claim,

namely that GMS provided substantially inferior products to Presscrete in relation to the Flushing Avenue project which resulted in delay of the project and reformation of the contract causing Presscrete substantial monetary damages and loss of business. In its negligence/loss of business opportunity claim, Presscrete specifically alleges that GMS's duty was one which is implied in every contract. Given the allegations of the counterclaim, the court finds that the tort cause of action is inextricably intertwined with the contract cause of action such that the negligence/loss of business opportunity claim is barred by the gist of the action.

Similar to the gist of the action doctrine, under the "economic loss doctrine," a plaintiff may not recover in tort for what is otherwise an allegation sounded in contract. This is especially true when there is no personal injury or property damage. *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 671 (3d Cir. 2002) (interpreting Pennsylvania law); *Reilly Foam Corp. v. Rubbermaid Corp.,* 206 F.Supp.2d 643, 658 (E.D.Pa. 2002) (same). As indicated, Presscrete's negligence/loss of business opportunity claim sounds in contract. Moreover, in its response, Presscrete concedes there has been no physical harm or other property damage. As such, the court also finds that the negligence/loss of business opportunity claim is barred by the economic loss doctrine. GMS's motion to dismiss will be granted on this basis.

Because the court finds that any amendment of the breach of the covenant of good faith and fair dealing and negligence/loss of business opportunity claims would be futile, dismissal of these claims will be with prejudice. An appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 15, 2020**
20-63-01